IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Beatrice Sullivan David as Personal Representative of the Estate of Thomas B. Sullivan, #270534, and Mrs. Jacquelyn T. Sullivan,<br><br>                Plaintiff,<br><br>vs.<br><br>MCI WorldCom, Inc.,<br><br>                Defendant. | Civil Action No. 8:04-0033-HMH-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) DSC, all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

The defendant MCI WorldCom, Inc. ("WorldCom") filed its motion for summary judgment in the instant action on March 9, 2005. By order filed March 9, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if she failed to adequately respond to the motion. The plaintiff filed a response in opposition to the motion on March 28, 2005. The defendant filed a reply to the response on April 11, 2005, and the plaintiff filed a sur-reply on April 22, 2005.

## FACTS PRESENTED

The complaint in this action purports to state causes of action on behalf of a single plaintiff, Beatrice Sullivan David, who is described in the caption as acting on behalf of the estate of Thomas B. Sullivan and the Estate of Mrs. Jacquelyn T. Sullivan. However, the body of the complaint makes clear that Mr. Sullivan is not a decedent and is currently confined at the Perry Correctional Institution. He is alleged to be the widower of the deceased Mrs. Sullivan (comp. at 1). Mrs. David is the sister of Mr. Sullivan (comp. at 2).

This action was originally filed in state court and was removed by the defendant based upon diversity jurisdiction. On January 14, 2004, this court stayed the action pending resolution of a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New York. On October 31, 2002, the bankruptcy court confirmed the Debtors' Modified Second Amended Joint Plan of Reorganization, which became effective on April 20, 2004 (def. m. to dismiss, ex. A, B). On January 24, 2005, the case was returned to the active roster.

The plaintiff alleges in her complaint that Mrs. Sullivan, formerly an employee of the defendant, "step[ped] on a rusted nail enlarged [sic] out of the parking lot pavement on MCI property" in September 1999 (comp. at 2). The plaintiff claims that thereafter Mrs. Sullivan's foot had to be amputated because of gangrene caused by the rusty nail; the amputation caused Mrs. Sullivan to gain excessive weight, requiring her to undergo gastric bypass surgery; and Mrs. Sullivan died from complications of the surgery (comp. at 2-3). The plaintiff further alleges that Mr. Sullivan "lost the society of his wife and suffered anguish by the actions above by defendant(s)" (comp. at 5). Finally, the plaintiff alleges that the defendant wrongfully terminated Mrs. Sullivan's insurance coverage while she was on sick leave (comp. at 5). According to the plaintiff, Mrs. Sullivan was terminated as an employee by the defendant on October 26, 2000 (comp. at 4).

The plaintiff alleges three causes of action in her complaint. First, she contends that the defendant failed to follow its stated policy in maintaining a safe work environment, an act of alleged "intentional tort, negligent and gross negligent [sic]" that allegedly caused Mrs. Sullivan's injuries (comp. at 6); second, she contends that the defendant breached an insurance contract with Mrs. Sullivan and committed "disability discrimination" against her (comp. at 6); and third, Mr. Sullivan seeks to recover on a loss of consortium claim under South Carolina Code Annotated Section 15-75-20 (comp. at 6).

The defendant notes in its motion to dismiss that in a "First Amendment to Complaint,"[1] the plaintiff seeks to incorporate the original complaint by reference. The defendant goes on to state that there are few, if any, new factual allegations in the amended complaint and that the "primary purpose" of it "appears to be to convert Plaintiff's generalized claim of 'disability discrimination' into a claim under the Americans with Disabilities Act" ("ADA") (def. m. to dismiss at 3). Based upon the foregoing, it appears that the plaintiff has attempted to state four claims: (1) a negligence/tort claim arising from the defendant's alleged premises liability; (2) a claim for wrongful termination of Mrs. Sullivan's insurance benefits; (3) a claim for violation of the ADA; and (4) a loss of consortium claim. According to the original complaint, the plaintiff is bringing the first three claims as Mrs. Sullivan's personal representative pursuant to South Carolina's "survival action" statute, South Carolina Code Annotated Section 15-5-90 (comp. at 1).

---

[1] On September 20, 2004, the plaintiff moved to amend her original complaint. In the order restoring this case to the active roster on January 24, 2005, this court granted the plaintiff's motion to amend and directed the plaintiff to file and serve her amended pleading within 15 days. The plaintiff did not timely file an amended pleading. In an order dated March 2, 2005, this court noted that the plaintiff had not filed her amended pleading, nor had she provided the court with evidence that the amended pleading had been served on the defendant. The plaintiff was given until March 21, 2005, to file any amended pleading. As of the date of the instant order, the plaintiff has not yet filed an amended complaint. In its motion to dismiss, the defendant states that the plaintiff served it with an amended complaint on February 22, 2005 (def. m. to dismiss 2). Accordingly, for purposes of this motion, this court will consider the claims as set forth by the defendant in its motion. However, this court has not seen the amended complaint, and it is not part of the record of this case.

3

**ANALYSIS**

The defendant argues that the plaintiff's claims are barred by WorldCom's Bankruptcy Plan and further contends that the plaintiff may seek relief only in the United States Bankruptcy Court for the Southern District of New York. The plaintiff's claims arose prior to July 11, 2002, the date on which WorldCom and its subsidiaries filed their bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York. WorldCom's Bankruptcy Plan provides as follows:

> 10.02 <u>Discharge of Claims and Termination of Equity Interests.</u> Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall be in exchange for and in complete satisfaction, discharge, and release of all existing debts and Claims, and shall terminate all Equity Interests, of any kind, nature, or description whatsoever, including any interest accrued on such Claims from and after the Commencement Date, against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Equity Interests in the Debtors, shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest.
>
> 10.03 <u>Discharge of Debtors.</u> Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of an from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or Terminated Equity Interest in the Debtors.

(Def. m. to dismiss, ex. A, Debtors' 2nd Amended Plan ¶¶ 10.02, 10.03).

When the Plan was confirmed on October 31, 2003, and at the time the Plan became effective on April 20, 2004, a permanent injunction was issued as a matter of law against all claimants from commencing or continuing any actions or any attempts to collect pre-petition obligations from WorldCom pursuant to Section 524(a) of the Bankruptcy Code:

> 10.04  <u>Injunction.</u>  Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all entities who have held, hold, or may hold Claims against or Equity Interests in any or all of the Debtors and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or Reorganized Debtors, with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against the Debtors or Reorganized Debtors on account of any such Claim or Equity Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors on account of any such Claim or Equity Interest, (iv) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan, and (v) taking any actions to interfere with the implementation or consummation of the Plan.

(Def. m. to dismiss, ex. A, Debtors' 2nd Amended Plan ¶ 10.04).

*See* 11 U.S.C. §524(a).

As argued by the defendant, the Plan's terms bar the plaintiff from litigating the claims against the defendant. Further, the order confirming the Plan provides that the bankruptcy court retains exclusive jurisdiction to hear and determine adversary proceedings, to resolve disputed claims, and "to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan" (order at 13-14). Based upon the foregoing, the plaintiff's claims should be dismissed.

5

Even assuming that the plaintiff's claims could be brought against the defendant, the plaintiff's premises liability and loss of consortium claims are barred by the statute of limitations. The limitations period for such claims is three years. S.C. Code Ann. §15-3-530(2), (5) (Law. Co-op. 1988). The claims began to accrue when Mrs. Sullivan was injured in the defendant's parking lot in September 1999. *See Wiggins v. Edwards*, 442 S.E.2d 169, 170 (S.C. 1994) (holding that limitations period began to accrue as of date of injury, not on date that plaintiff completed investigation of claim and knew identity of wrongdoer); *Preer v. Mims*, 476 S.E.2d 472, 475 (S.C. 1996) (noting that loss of consortium claim "does not accrue until the loss of the services, society and companionship of the spouse has actually occurred, which has been defined as the point when the spouse sustained the injuries"). The limitations period for these claims ran in September 2002, three years after Mrs. Sullivan was injured. The plaintiff filed the instant complaint over a year later, on November 26, 2003.

The plaintiff argues that the limitations period is actually six years (pl. resp. m. to dismiss at 5). The plaintiff is apparently relying on the statute of limitations in effect prior to 1988, which is not applicable to this case. *See* S.C. Code Ann. §15-3-530, Editor's Note. The plaintiff also argues that the limitations period should be tolled because Mr. Sullivan is a prisoner (pl. resp. m. to dismiss at 4-5). As noted by the defendant, the statute cited by the plaintiff was amended in 1996 to remove the "tolling exception" for prisoners. *See* S.C. Code Ann. § 15-3-40 (Law. Co-op. 1996). The plaintiff also contends that the limitations period governing the loss of consortium claim began to run on March 21, 2001, after the plaintiff sustained "a recurrence of the primary injury" (pl. resp. m. to dismiss at 5). However, in the complaint, the plaintiff alleges that the defendant's violation of its "own safety policies/procedures" (with respect to the alleged rusty nail in its parking lot in September 1999) was what caused Mr. Sullivan to suffer a loss of consortium (comp. at 5), not its failure to "rehabilitate" Mrs. Sullivan following her return to work in 2001. As argued

6

by the defendant, the plaintiff is bound by these allegations (def. reply brief at 4). Based upon the foregoing, the claims are time-barred.

Furthermore, the plaintiff's claims under the ADA are barred because the plaintiff has failed to plead exhaustion of remedies. In ADA cases, as in Title VII cases, plaintiffs must exhaust their administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") before bring a civil action in court. *See Davis v. Virginia Comm. Univ.*, 180 F.3d 626, 628 n. 3 (4th Cir. 1999); *see also* 42 U.S.C. §12117 (incorporating Title VII's enforcement scheme into the anti-discrimination regulatory framework of the ADA). While the plaintiff argues in the response to the motion to dismiss that exhaustion of administrative remedies is not required under the "public entity" provisions of Title II of the ADA (pl. resp. m. to dismiss 9), the plaintiff's claim in this case is not against a public entity and, therefore, the argument is irrelevant. Based upon the foregoing, this claim should be dismissed.

Lastly, the plaintiff claims that the defendant wrongfully terminated Mrs. Sullivan's employer-provided insurance benefits (comp. at 5). The plaintiff characterizes the claim as disability discrimination or breach of contract (comp. at 4-5). However, the claim relates to an "employee welfare benefit plan" under the Employee Retirement Income Security Act ("ERISA"), defined as "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through insurance or otherwise, (A) medical, surgical, or hospital care or benefits . . . ." 29 U.S.C. §1002(1). ERISA specifically preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title . . . ." 29 U.S.C. §1144(a). As stated by the Fourth Circuit Court of Appeals in *Griggs v. E.I. Dupont de Nemours & Co.*, 237 F.3d 371 (4th Cir. 2001):

> When a cause of action under state law is "premised on" the existence of an employee benefit plan so that "in order to prevail, a plaintiff must plead, and the court must find, that an

7

>ERISA plan exists," ERISA preemption will apply. Alternatively, a state law claim is preempted when "it conflicts directly with an ERISA cause of action."

*Id.* at 378 (quoting *Ingersoll-Rand Co. v. McLendon*, 498 U.S. 133, 140, 142 (1990)) (citations omitted). As noted above, the plaintiff characterizes the claim as disability discrimination or breach of contract. However, "[t]o the extent that ERISA redresses the mishandling of benefits claims or other maladministration of employee benefit plans, it preempts analogous causes of action, whatever their form or label under state law." *Powell v. Chesapeake & Potomac Telephone Co. of Virginia*, 780 F.2d 419, 422 (4th Cir. 1985).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the defendant's motion to dismiss the plaintiff's claims should be granted. Should the district court adopt this recommendation, the defendant's pending motion to strike the plaintiff's sur-reply will be rendered moot.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

May 10, 2005

Greenville, South Carolina